# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| RONDA M. HOLLIHAN,      )<br>    Plaintiff,      )<br>                         )<br>    v.                   )<br>                         )<br>CAROLYN W. COLVIN,       )<br>Acting Commissioner of the )<br>Social Security Administration, )<br>    Defendant.      )  | CAUSE NO.: 2:14-CV-474-PRC |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Ronda M. Hollihan on December 31, 2014, and a Plaintiff's Opening Brief [DE 16], filed on June 29, 2015. Plaintiff requests that the September 26, 2013 decision of the Administrative Law Judge denying her claim for disability insurance benefits be reversed and remanded for further proceedings. On October 5, 2015, the Commissioner filed a response, and Plaintiff filed a reply on October 19, 2015. For the following reasons, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for disability insurance benefits on April 16, 2012. Her alleged onset date is March 12, 2012. Her claim was denied initially and upon reconsideration. Plaintiff timely requested a hearing, which was held on July 29, 2013. The hearing was conducted in Valparaiso, Indiana before Administrative Law Judge (ALJ) Mario G. Silva. Also in attendance were Plaintiff's attorney, Plaintiff's husband, Plaintiff's daughter, and an impartial vocational expert. On September 26, 2013, the ALJ issued a written decision denying benefits, making the following findings:

    1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2. The claimant has not engaged in substantial gainful activity since March 12, 2012, the alleged onset date.

3. The claimant has the following severe impairments: depression, anxiety, agoraphobia, and borderline intellectual functioning.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to simple, routine, repetitive tasks. The claimant is unable to perform work that would require directing others, abstract thought, or planning. The claimant would require work that would involve only simple work related decisions and routine workplace decisions. The claimant must be able to work at a flexible pace with no tandem task and no teamwork where one production step is dependent on the prior. The claimant requires work that is isolated from the public with only occasional interaction with coworkers and supervisors.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born [in 1968] and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. The claimant has a limited education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 12, 2012, through the date of this decision.

(AR 17-26).

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Plaintiff filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning

of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

**DISABILITY STANDARD**

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as

4

an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. § 404.1520(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. § 404.1520(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity (RFC), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(I)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite

her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff seeks reversal and remand for further proceedings, or alternatively an award of benefits, arguing that the ALJ failed to properly (1) evaluate Plaintiff's credibility, (2) evaluate Plaintiff's mental impairments, and (3) weigh the opinion evidence. Plaintiff further argues that, because of the above failures, the ALJ's vocational findings are founded on legal error and not supported by substantial evidence.

### A. Credibility

In making a disability determination, the ALJ must consider a claimant's statements about her symptoms, such as pain, and how the symptoms affect her daily life and ability to work. *See* 20 C.F.R. § 404.1529(a). Subjective allegations of disabling symptoms alone cannot support a finding of disability. *Id*. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1) The individual's daily activities;
(2) Location, duration, frequency, and intensity of pain or other symptoms;
(3) Precipitating and aggravating factors;
(4) Type, dosage, effectiveness, and side effects of any medication;
(5) Treatment, other than medication, for relief of pain or other symptoms;
(6) Other measures taken to relieve pain or other symptoms;
(7) Other factors concerning functional limitations due to pain or other symptoms.

6

*See* 20 C.F.R. § 404.1529(c)(3). "Because the ALJ is 'in the best position to determine a witness's truthfulness and forthrightness . . . this court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012) (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 504-05 (7th Cir. 2004)); *see also Prochaska*, 454 F.3d at 738. Nevertheless, "an ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)); SSR 96-7p, 1996 WL 374186, at *2 (Jul. 2, 1996) ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").

The ALJ provided three reasons for discrediting Plaintiff's credibility: (1) Plaintiff's work attendance, (2) gaps in Plaintiff's treatment history, and (3) Plaintiff's activities of daily living. The ALJ writes that, in these three areas, Plaintiff's allegations are inconsistent with the evidence of record. Plaintiff argues error as to each reason, and the Court will address each argument in turn.

*1.     Work Attendance*

Regarding Plaintiff's work attendance, Plaintiff testified that she was missing days of work and leaving work early, but the ALJ determined Plaintiff's testimony to be inconsistent with evidence of record. The ALJ wrote:

> [T]he attendance calendar revealed that the claimant had zero unexcused absences and 4 excused absences per year for the past 2 years prior to her alleged onset date. The vocational expert testified that 6 excused absences would generally be tolerated at an unskilled level of work and the claimant's work history would suggest she would be within that tolerance.

(AR 23). Plaintiff's 2010 to 2012 attendance calendars are on pages 228 to 230 of the Administrative Record, and on each calendar, a prominent box indicates that during Plaintiff's *orientation period*, she had four total absences and no unexcused absences. The calendars themselves use numerous abbreviations and are hard to decipher, but Plaintiff's records indicate that she did not have exactly four absences each year. For example, in 2011, six days are marked "T," for tardy; two days are marked "A," for absent; one day is marked "D," for disciplinary day off; two days are marked "USS," for unscheduled sick day; twenty-three days are marked "F" or "FMLA," for leave covered under the FMLA; seven days are marked "USV," for unscheduled vacation day; and four days are marked "SV," for scheduled vacation day. *Id.* at 229. While some of these notations have been further marked, possibly indicating a change in that day's attendance determination, the Court finds no reasonable way to determine from this calendar that Plaintiff had exactly four excused absences and no unexcused absences in 2011. It appears that the ALJ erroneously used the summary from the orientation period to reach his conclusion. Because the ALJ discredited Plaintiff's credibility due to a misreading of the attendance records, the credibility determination is in error.

The Commissioner argues that any error committed is harmless. An error is harmless only if the Court is convinced that the ALJ would reach the same result on remand. *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). Because, depending on an accurate tally and classification of the days indicated on the calendar, Plaintiff may have exceeded the acceptable threshold of six excused absences given by the vocational expert, the Court cannot say that this error is harmless. Remand is required.

2. *Treatment History*

Plaintiff next argues the ALJ erred in discrediting Plaintiff's credibility because of her

treatment history. In making his credibility determination, the ALJ characterizes Plaintiff's treatment history as "generally conservative and infrequent." (AR 23). Previously in the decision, the ALJ noted Plaintiff's sessions with a counselor from March 2012 to August 2012 and with a psychiatrist from October 2012 to February 2013. *Id.* at 20. The ALJ also pointed out that Plaintiff is prescribed medicine for her diagnosed depression and panic disorder and that suicidal statements led to an emergency room visit in June 2012. *Id.* at 20-21. The ALJ explains that, though some gaps in treatment can be explained by Plaintiff's financial situation, the longitudinal view of Plaintiff's treatment history "does not support that the claimant is incapable of all basic mental work activity." *Id.* at 23.

However, the ALJ does not provide any evidence to support his opinion that more frequent or aggressive treatment would be necessary if Plaintiff's impairments are as severe as she alleges. While the ALJ "may consider conservative treatment in assessing the severity of a condition," he should cite medical evidence about what kind of treatment would be appropriate. *Brown v. Barnhart*, 298 F. Supp. 2d 773, 797 (E.D. Wis. 2004) (citing *Dominguese v. Massanari*, 172 F. Supp. 2d 1087, 1096 (E.D. Wis. 2001)). Instead of citing evidence, the ALJ impermissibly relied on his own lay opinion that more frequent or aggressive treatment would have been pursued if Plaintiff's symptoms were as severe as alleged. If the ALJ wishes to pursue this reasoning on remand, the ALJ should ask why Plaintiff's treatment was not more aggressive, and, if the ALJ determines that the treatment was conservative, he shall discuss and support why more aggressive treatment would have been medically appropriate. *See Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009).

The Commissioner asserts that the ALJ notified Plaintiff at the administrative hearing that the ALJ considered her treatment history to be limited, and, consequently, Plaintiff should not be

surprised by the ALJ's decision. However, whether Plaintiff is surprised is immaterial to this Court's review. Notice does not cure legal error.

3. *Activities of Daily Living*

Plaintiff contends that the ALJ misused Plaintiff's daily activities in evaluating her credibility. The ALJ found evidence in the record that Plaintiff's activities of daily living include helping a child with homework, playing catch with her children, taking the children to the bus stop, and completing projects in the home (such as painting the kitchen). (AR 22). The ALJ also noted evidence that Plaintiff left the home to pick up a paycheck, stayed with her husband when he was hospitalized, and could go to the store or gas station. *Id.*

The Seventh Circuit Court of Appeals has repeatedly cautioned ALJs against relying on daily activities as proof that a claimant can work full-time, eight hours a day, forty hours a week. *See Engstrand v. Colvin*, 788 F.3d 655, 661-62 (7th Cir. 2015); *Scrogham v. Colvin*, 765 F.3d 685, 700 (7th Cir. 2014); *Beardsley v. Colvin*, 758 F.3d 834, 838 (7th Cir. 2014); *Roddy*, 705 F.3d at 639; *Spiva v. Astrue*, 628 F.3d 346, 352 (7th Cir. 2010). "The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment as well, often differ dramatically between home and office." *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006).

The ALJ has failed to show how Plaintiff's activities demonstrate that she is capable of working full-time. Helping with homework and painting the kitchen are activities performed within the home, and, when playing catch, Plaintiff is with her children, who provide her with support. The children also provide support on the way to the bus stop, though Plaintiff must return to her house without them. Plaintiff testified that when she goes to the gas station, her children go with her (AR 50). Therapy notes from May 2012 indicate that Plaintiff picked up a paycheck at work, but she was

10

told she had to return to work on the next Monday, and she "cried all the way to her home." *Id.* at 290. The therapist included in her assessment for that session that Plaintiff "is maintaining an edge sufficient to get through the day but not enough to get back to work." *Id.* The ALJ does not discuss how Plaintiff got to the hospital to visit her husband. That is, there is no indication in the ALJ's decision that Plaintiff drove to the hospital alone. It is possible her daughter took her there, and, once there, she was with her husband, a person whose presence is supportive to Plaintiff. The ALJ failed to build a logical bridge between these activities and his decision to discredit Plaintiff's credibility, as these activities do not show that Plaintiff is capable of sustaining full-time work.

## B. Evaluation of Mental Impairments

Plaintiff argues that the ALJ erred by not following the "special technique" for evaluating mental impairments. The special technique, set forth in 20 C.F.R. § 404.1520a, is used at steps two and three of the evaluation process to determine whether a claimant has a medically determinable mental impairment and whether that impairment causes functional limitations. *Craft*, 539 F.3d at 674; SSR 96-8p, 1996 WL 374184 (July 2, 1996). First, the ALJ determines whether a claimant has a medically determinable mental impairment(s) by evaluating the claimant's "pertinent symptoms, signs, and laboratory findings." 20 C.F.R. § 404.1520a(b)(1). The ALJ must document that finding of a medically determinable mental impairment and rate the degree of limitation in four broad "functional areas" known as the "B criteria": activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Pepper*, 712 F.3d at 365 (citing § 404.1520a(c)(3); *Craft,* 539 F.3d at 674 (citing 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00 *et seq.*)). Each assigned rating corresponds with a determination of the severity of the mental impairment. *Id*. (citing 20 C.F.R. § 404.1520a(d)(1)). The ALJ must document use of the technique,

incorporating the relevant findings and conclusions into the written decision. *Id.* (citing § 404.1520a(e)(4)). The ALJ must refer to significant medical evidence and the functional limitations he considered in reaching his conclusions about the severity of the mental impairments. *Craft*, 539 F.3d at 675. The Seventh Circuit Court of Appeals has held that, "[u]nder some circumstances, the failure to explicitly use the special technique may . . . be harmless error." *Id.* But this is true only when the ALJ provides "enough information to support the 'not severe' finding," and those reasons are supported by medical evidence. *See Pepper,* 712 F.3d at 366 (internal quotation omitted).

The ALJ, in his step 2 and 3 analysis, first laid out the B criteria and indicated that he had considered them. The ALJ then presented the opinion of state agency psychological consultant Ken Lovko, PhD., including Dr. Lovko's findings regarding each of the B criteria: mild restriction in activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration persistence, or pace; and one to two episodes of decompensation, each of extended duration. The ALJ noted that Dr. Lovko reviewed the record as it existed at the time of the review and that Dr. Lovko's opinion is consistent with the totality of the evidence, including Plaintiff's activities. The ALJ gave this opinion "considerable weight."

The ALJ, without discussing any other opinions or evidence, then stated "[b]ecause the claimant's mental impairments do not cause at least two 'marked' limitations or one 'marked limitation and 'repeated' episodes of decompensation, each of extended duration the 'paragraph B' criteria . . . are not satisfied." (AR 18).

Plaintiff's argument that the ALJ did not use the special technique hinges on a technicality. The ALJ nowhere expressly stated that he adopted Dr. Lovko's findings regarding the B criteria. Plaintiff contends that this means the ALJ made no B criteria findings. However, the ALJ explained

12

the required findings, presented Dr. Lovko's opinion regarding those findings, gave that opinion considerable weight, and discussed no other opinion. In context, it is clear that the ALJ adopted Dr. Lovko's findings for the B criteria. Despite Plaintiff's argument to the contrary, the ALJ used the special technique to evaluate Plaintiff's mental impairments.

Plaintiff correctly states that an ALJ must discuss the significant medical history and the functional limitations that were considered in reaching the conclusion about an impairment's severity. *See Craft*, 539 F.2d at 675. The ALJ has done so. He considered whether Plaintiff's impairments meet listings 12.04, 12.05, and 12.06 and discussed Plaintiff's medical history and ability to care for herself in determining that Plaintiff's impairments did not meet or equal the listings.

Plaintiff cites *Pimentel v. Astrue*, an unpublished decision from a sister district, in support of her argument for remand. No. 11 CV 8240, 2013 WL 93173 (N.D. Ill. Jan. 8, 2013). In *Pimentel*, the court determined that the ALJ had only discussed, and not adopted, the B criteria opinions of a medical expert who testified at the administrative hearing. Because the Court finds that the ALJ in the present case adopted the B criteria opinions of Dr. Lovko, *Pimentel* is not instructive.

The Court finds that remand is not warranted on the argument that the ALJ failed to use the special technique. However, this finding does not extend to the weight given to the medical opinions, which the Court addresses below.

### C. Weight to Treating Medical Opinion

Plaintiff argues the ALJ erred in not giving controlling weight to the medical opinion of Dr. Manana Gegeshidze, her treating psychiatrist. An ALJ must give the medical opinion of a treating psychiatrist controlling weight as long as the

13

treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record . . . . When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons . . . for the weight we give to your treating source's opinion.

20 C.F.R. § 404.1527(c)(2); *see also Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008); *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006); SSR 96-8p; SSR 96-2p, 1996 WL 374188 (Jul. 2, 1996). In other words, the ALJ must give a treating physician's opinion controlling weight if (1) the opinion is supported by "medically acceptable clinical and laboratory diagnostic techniques" and (2) it is "not inconsistent" with substantial evidence of record. *Schaaf*, 602 F.3d at 875.

The ALJ declined to give Dr. Gegeshidze's opinion controlling weight because the ALJ determined that the opinion is inconsistent with evidence of record. The ALJ named the following items as inconsistencies: (1) Dr. Gegeshidze opined that Plaintiff had repeated episodes of decompensation, but there is no evidence of decompensation and Dr. Gegeshidze did not list the dates of any episodes in the opinion; (2) Dr. Gegeshidze's treatment notes state that Plaintiff maintained gross cognitive function; and (3) there is no evidence that Plaintiff would be unable to sustain concentration.[1]

The ALJ's first reason for rejecting Dr. Gegeshidze's opinion is the lack of evidence regarding episodes of decompensation. Dr. Gegeshidze indicated that Plaintiff has four or more

---

[1] The ALJ also mentioned that the medical opinion "diverges significantly from . . . the claimant's daily functioning including her social functioning." (AR 24). However, the ALJ provides no further explanation as to how Plaintiff's daily activities contradict Dr. Gegeshidze's opinion, and the Court has already addressed in this opinion the Seventh Circuit Court of Appeals' caution to ALJ's when considering daily activities as evidence.

episodes of decompensation within a twelve month period, each of at least two weeks duration. The medical opinion does not list dates of any episodes, despite the form asking for the dates to be provided.

Dr. Gegeshidze's opinion regarding episodes of decompensation is incomplete. The failure to list the dates of episodes of decompensation does not necessarily render the opinion inconsistent, but it does make the opinion unverifiable. There is evidence that Plaintiff took extended FMLA leave from work, (AR 228), had suicidal ideations, (AR 314), and had worsening symptoms, (AR 308), but the Court has found no evidence that makes it clear to the lay reader that episodes of decompensation have occurred.[2] The ALJ's refusal to give controlling weight to Dr. Gegeshidze's opinion that Plaintiff had four extended episodes of decompensation in a twelve month period is justified. However, this justification does not extend to a rejection of all of Dr. Gegeshidze's responses to the entire mental impairment questionnaire. Social Security Ruling 96-5p clarifies that "medical source statements may actually comprise separate medical opinions regarding diverse physical and mental functions," and that individual decisions to adopt or reject each opinion may be necessary. 1996 WL 374183, at *4 (July 2, 1996). As applied to the instant medical source

---

[2] The Social Security Administration defines episodes of decompensation as

> exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two). Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C)(4).

statement, the incomplete opinion regarding episodes of decompensation is not sufficient reason to reject Dr. Gegeshidze's opinion regarding the other B criteria.

Next, the ALJ found Dr. Gegeshidze's opinion inconsistent because the ALJ found that there is no evidence that Plaintiff cannot sustain concentration. However, this does not create an inconsistency with Dr. Gegeshidze's opinion that Plaintiff has marked deficiencies in concentration, persistence, and pace. The ALJ notes that Plaintiff reported confusion only one time, and as a result, her medication was changed, resolving the issue. However, confusion is not the only reason why concentration, persistence, or pace may be deficient. The ALJ is unable to identify any positive evidence of Plaintiff's capacity to concentrate. The ALJ asserts that the lack of evidence is telling, but the ALJ does not clarify the type of evidence he would expect to see regarding Plaintiff's concentration if it is as severe as Dr. Gegeshidze opines. A lack of evidence supporting the opinion is not equivalent to evidence contradicting an opinion. The standard is that the opinion must be "not inconsistent," and the ALJ's analysis does not show Dr. Gegeshidze's opinion to be otherwise.

Similarly, the ALJ does not explain how gross cognitive function is inconsistent with Dr. Gegeshidze's opinion. Dr. Gegeshidze's opinion and the treatment note that Plaintiff maintains gross cognitive function do not contradict each other on their face. Without more, the treatment note is not inconsistent with Dr. Gegeshidze's opinion.

Though the parties do not address this next point, the Court wishes to provide guidance to aid the ALJ upon reconsideration of this claim on remand. Dr. Gegeshidze, a treating medical source, gave opinions regarding the B criteria of the special technique for evaluating mental impairments. However, no discussion of this opinion is found in the ALJ's application of the special technique. The discussion and weighing of Dr. Gegeshidze's opinion takes place later in the opinion

16

during the discussion of Plaintiff's RFC with no indication that the weight also applies to the opinions as they apply to the special technique. The ALJ must consider and weigh Dr. Gegeshidze's opinion in applying the special technique.

Further, if a treating medical opinion is not given controlling weight, the opinion must be assigned weight in accordance with 20 CFR § 404.1527(c). Factors the ALJ considers in weighing medical opinion evidence include the examining relationship, the treatment relationship, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, specialization, and other factors brought to the ALJ's attention. *Id.*

The Commissioner points to the ALJ's observation that Dr. Gegeshidze's treatment notes referred to Plaintiff's panic attacks as "mild" on October 1, 2012, and as "full blown" on October 9, 2012. The ALJ writes that "the only indicated difference" between the two dates is "completion of paperwork in support of the claimant's application and appeal for benefits." (AR 21). The Commissioner argues this should be used in support of the ALJ assigning less than controlling weight to Dr. Gegeshidze's opinion. There are a few flaws with the Commissioner's argument. First, the ALJ did not cite this as a reason for discounting Dr. Gegeshidze's opinion. *See Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012) ("[T]he Commissioner's lawyers cannot defend the agency's decision on grounds that the agency itself did not embrace." (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943); *Parker v. Astrue*, 587 F.3d 920, 922 (7th Cir. 2010)). Second, any perceived inconsistency pertains to the internal consistency of the treatment notes, not to consistency with the opinion. Third, the ALJ noted that Plaintiff had a panic attack lasting thirty minutes on the morning of October 9, 2012, which is another difference between the two dates. Finally, the Seventh Circuit

17

Court of Appeals acknowledges that "a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir 2011). The change in Dr. Gegeshidze's report could be the result of a change to Plaintiff's condition or a result of Plaintiff having a worse day than that of the previous appointment. The Commissioner asks this Court to believe that Dr. Gegeshidze embellished her October 9, 2012 report to enhance Plaintiff's chances with her application and further asks this Court to assign this reasoning to the ALJ's decision to discount Dr. Gegeshidze's opinion. The Court declines to do so.

### D. Vocational Findings

Plaintiff argues that the ALJ's vocational findings are in error because they are based upon the flawed RFC. At its core, Plaintiff's argument is that the ALJ's errors in earlier steps of the process will affect subsequent steps. She is correct. The Court, having addressed Plaintiff's arguments regarding error in the previous steps, need not address them again here.

### E. Request for an Award of Benefits

An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). Based on the discussion above, remand, not an immediate award of benefits, is appropriate.

### CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief sought in Plaintiff's Opening Brief [DE 16], **REVERSES** the final decision of the Commissioner of Social Security, and

**REMANDS** this matter for further proceedings consistent with this Opinion and Order. The Court **DENIES** Plaintiff's request to award benefits.

So ORDERED this 26th day of February, 2016.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT